Your Honors, it may have pleased the court, but above all may it please the Lord that it be made clear today, Jason Smallwood is dead, and he does not want any veteran's benefits. He doesn't want pension, he doesn't want travel reimbursement or health care, and neither does his estate. The estate seeks $5 million, punitive damages, attorney's fees, costs, an amount equal to the taxes, and any other remedy under justice. Can you identify any money mandating language in 10 U.S.C. 1145, 5 U.S.C. 301, or 38 U.S.C. 511? No, Your Honor, I cannot. And that much the government and I can agree on, that we absolutely do waive any right to a money mandating statutory claim. That's not what this is, and we never claim that it was. Well, what is it if it's not a money mandating claim? This is a case that we brought for an implied breach of contract against the VA. We believe that we've met our requirements and our pleadings, that we've raised a fair inference, that this is an implied contract, and that we have conferred Tucker Act jurisdiction. And at no point did we claim that we want veterans' benefits. And in order to affirm the trial court's decision, this court must believe that somehow we were seeking veterans' benefits. But let me read to you from SISM v. United States. We've explained that Congress's authority and various courts' consistent interpretation thereof demonstrate that military health care benefits as a form of compensation have long been exclusively a creature of statute, not contract. If the VA's denial of health benefits is exclusively a creature of statute, not contract, why shouldn't we hold that the implied, in fact, contract claim is preempted? Yes, Your Honor, simply because we're not seeking benefits. We're not seeking health care benefits, which is exactly what the trial court's decision- Well, you're seeking damages for failure to pay the benefits. We're seeking damages based on conduct that we believe was outlined in the complaint in those paragraphs. But the conduct is the denial of benefits. There was conduct that gave rise to an understanding that there was this mutuality of an intent to contract. It wasn't, and I understand that it can be seen as a denial of benefits, but frankly, it's offensive that it was characterized as a denial of benefits. It wasn't a denial of benefits. That's assumed that there was an actual protocol in place to even get as far to deny the benefits. Do you have authority that takes your argument outside the standard law that I quoted to you? We believe that, yes, Your Honor, we do believe that the Tucker Act vests us with that jurisdiction. If we raise a fair case- Do you have police authority? We have schism. That's directly on point against you. But I do understand that, but I disagree that this is a military benefits case. We believe that we're not seeking any military benefits. You're seeking damages for denial of military benefits. We're seeking damages based on what we believe was an agreement that these parties came to. What was the agreement for? Was the agreement if I don't get health care benefits that I'm entitled to, then I deserve $5 million? I'm trying to understand what is the implied agreement. And in no way am I trying to assert here that we've proven our case in the complaint, and we have not. I believe that we had to prove it in the complaint. I understand. I'm trying to understand what is the nature of the agreement. Is the agreement that if I'm wrongfully denied veteran health care benefits, that is a breach of a contract that entitles me to damages that flow from that breach of a contract? I'm trying to think it through here. With the exception that we don't believe that this was a denial of health care benefits. We believe this was two parties with an understanding, and one party just completely... Okay, and what is that understanding that the two parties had? The VA being that they would provide health care, and then Jason believing that he was going to receive health care. We don't believe it was... So the understanding is the government was obligated to provide health care, and it somehow breached that obligation. Is that... Yes, yes. However, we... By not granting health care benefits. Well, they never even undertook to do anything. They held themselves out there that they were going to help them. He believed they were going to help them, and there wasn't any help coming. So we believe we have presented some evidence. We do have more, and we believe that the government has more in their possession. But to say that we haven't even raised a fair inference that there is this implied contract enough to vest Tucker Act jurisdiction, we believe is just not true. Your problem really is that you're suing the sovereign, and immunity is limited only in certain specific derogations. The allegations you make in the complaint are disturbingly familiar if one reads the newspapers. Yes, Your Honor. But you have to act under the law. Yes, Your Honor. And the problem I have with your complaint and with your authorities is that it's all against you. You know, we can't shoot from the hip or bound by precedent. Absolutely. And I don't see that you've cited me to anything or the court to anything that takes us away from that precedent. I understand that. However, I also don't see any precedent that would say that we cannot bring it. The Tucker Act. The schism says it. And a ton of other cases where people have tried to pursue this line, where the military fails to act, or the VA fails to act, and a tragedy ensues. And that those cases belong under this 38 U.S.C. 511A, which vests this case essentially with the secretary. A statute that entirely deals with veterans' benefits. And we simply do not want benefits. You want damages for failure to provide benefits. Absolutely. Yes, Your Honor. However, the decision, and I have great respect for the U.S. Court of Federal Claims, and the presiding judge is certainly a fine man and a legal genius, but he made a mistake. I do believe a mistake was made. And that's okay, but we need to correct it. That judge essentially said that that court doesn't have jurisdiction. The secretary does. And that's just not true. The secretary has jurisdiction over claims for benefits. Ours is not a benefit. He's saying that you don't really want $5 million. You want veterans' benefits. And that's just not true. And it's also strange. We don't want veterans' benefits. We've said in our complaint what we want. We believe we've raised that fair inference that confers the Tucker Act jurisdiction. And I don't see anything that would expressly divest that jurisdiction. It's certainly not 511A. But as it stands, if nothing can vest jurisdiction, it has been held that the U.S. Court of Federal Claims, if it is a suit for money damages and the United States is a party, that that is the proper jurisdiction. Did he visit VA hospital facilities for treatment? He did not, no, Your Honor. He was sent home early from Afghanistan and essentially turned on the street. And when he did seek help from the VA, which was via phone, he was assured that he was going to get help and that help was coming. And there's a piece of evidence in the exhibits that referenced that 1010EZ form where it confirms that, okay, we have received your registration from the Hampton VA. There will be some follow-up coming. And it just never came. And the Hampton VA on record says, we don't have any record of Mr. Smallwood. There was no help coming. This is not a case where benefits were determined to not belong to him. This isn't that. Nobody determined anything. This was not a denial of VA health care. This was two parties that had a meeting of the minds and one party absolutely failed in performance. Okay, do you want to save the rest of your time for rebuttal? Yes, Your Honor. Thank you. So, Mr. Yale. May it please the Court. A couple of points in response. First, SCISM controls this case. You know, it's directly contrary precedent. You know, the benefits that we're talking about here are derived from the status of Mr. Smallwood as a soldier, as a veteran. Let's suppose hypothetically that he had gone to a VA hospital facility and he'd been turned away. Would he potentially have a cause of action for negligence? He could, Your Honor, under 38 U.S.C. 1151. You know, I think there would have to be an examination into the specifics of that, but you would need to file a claim with the VA under the ordinary claim procedures. Whether or not the mere sort of being turned away is sufficient under 1151 to, you know, reach the level of negligence, I think that may be more of a merits issue. There is an avenue there. What's the limitations period for making such a claim? Well, you need to file a claim with the VA through… Yeah, but how soon? Is there a time limit? For his family, for example. I'm not familiar with the exact time limit for a 1151 claim. I know in this case there have been additional tort claims filed against the VA. Those were denied, and I think at this point, given the short statute of limitations for those, those have now expired. Obviously, there had been a recovery there. 1151 works in conjunction with the Federal Tort Claims Act. But in this situation, at least on the merits, I'm somewhat skeptical that because appellant's counsel has represented that Mr. Smollett never went to a VA hospital in the first place, that there could be, on the merits, an 1151 claim. But again, all of these, you know, the tort claim, there's obviously no jurisdiction in the Court of Federal Claims. With regards, you know, schisms on point with regards to… Well, let's take the complaint and put some flesh on it and imagine, hypothetically, that what it says is somebody comes back traumatized from combat and sent home because of that, and they're in some way deeply disturbed. And they're so deeply disturbed that it's difficult for them to even seek help. And in some fashion, according to the plaintiff, they reach out for assistance and are told, yes, we'll help you. And then nothing happens. And as a consequence, they take their own life. That seems to be more or less what the complaint is saying. And under those circumstances, how far do they have to go, given the VA is a creature designed to deal with people who are not on a level playing field? That's the whole point of much of the statutory scheme. So how far do they have to go to get into the system when combat has made them such that they can't in a regular fashion? Well, certainly, Your Honor, I mean, Appellant's counsel in his complaint mentioned 10 U.S.C. 1145. I mean, there are certain mechanisms in place. There is an exam. Part of the purpose of that exam is so that an Army physician or someone akin to that can see whether or not there needs to be some sort of referral, for example, if somebody has PTSD or something like that. When was the exam here? Well, the exam here is in June 2012. As part of a separation? As part of a separation. There was no referral. That's in the record, the written answers that were provided. You know, at that point, there was no referral. Afterwards, after Mr. Smallwood died, there was a determination that he was service-connected. And so in that sense, benefits flowed from that. Back to answering sort of the specific question about, you know, obviously, the VA is a big organization. It's difficult when, for example, there's been an examination, there's been no referral for a specific illness or injury. If that were negligent, that would be a tort claims act. Exactly. That would much more fall if somebody had acted negligently. And really they, for example, misread all of the x-rays or whatnot. You know, that would have to be brought under the Federal Tort Claims Act, which happened in this case. And that's sort of a different matter. But what we're discussing here is whether or not there's a contract action under the Tucker Act. And we think that the case law is clear that there cannot be. That's why we're peppering you with hypotheticals. Sure, yeah. The DOD and the VA are not directly connected on the same sheet of music, are they? That is, the DOD person entering information into Mr. Smollett's record while he's in the Army, it doesn't pop up on a VA screen. I believe that's correct, Your Honor. I know that, well, at least I'm familiar with, I think the VA is trying to upgrade some of its IT systems. I'm not sure that that would solve your particular issue with them being connected. But they are separate agencies. And so there does need to be some sort of communication between the two agencies on an issue such as that. If there's nothing further, we ask that the Court affirm the Court of Federal Claims' decision dismissing for lack of jurisdiction. Okay. Thank you, Mr. Daly. Thank you, Your Honors. This is about damages. It's not about veterans' benefits. Jason's dead. He doesn't want benefits. And I understand that you say that there are damages from VA benefits or health care benefits. But 511A doesn't allow us to bring a claim for damages. So it is impossible that 511A could serve as our remedy here when we have plainly brought a claim for breach of an implied contract, claiming $5 million in punitive damages, and to be told that instead we can file a VA benefits claim is just not true. He's dead. You know? You can't get benefits. There's nothing that we've sought for benefits. Now, I will admit... Did his family obtain benefits, survivor benefits? They do receive a death pension, I believe, yes. To which they're entitled. And there may be some facts here that certainly support negligence and maybe 10 other cases against the government in this suit. But nothing would foreclose us to bring this implied breach of contract with the VA. And I understand that we have not proven our case in the complaint. However, we weren't required to. We were to bring a fair inference of Tucker Act jurisdiction here. And this complaint is a small piece in a larger litigation strategy. And for us to have to lay out all our evidence in a complaint puts the estate at an extremely disadvantaged state, especially knowing that we have an automatic motion to dismiss coming as soon as we file it. Your view that any veteran that seeks health care benefits but for whatever reason doesn't get health care benefits, either because their VA denies it or the VA doesn't respond, that that constitutes a breach of an implied contract? No, Your Honor. Okay. So what is it about the nature of your facts, your alleged facts, that make this case a breach of an implied contract? Because we don't believe it was a denial of benefits at all. We don't believe that this is that at all. There weren't any benefits denied, Mr. Smallwood. There was an understanding, we believe, between these two parties. And one party, the VA, failed miserably in their obligation under that agreement. But to say that he was denied benefits is just absolutely not true. What were they to provide? Because as the other party to the contract, what if they had fulfilled their contractual obligation? How would they have done so? By caring for him. By providing benefits, yes? Providing, yes, his health care. Thank you. Thank you. Okay. Thank you, Mr. Kelly. Thank both counsel and cases submitted.